UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER COLEY,  :
    Plaintiff,  :
      :
    v.  :    C.A. No. 16-03ML
      :
CAROLYN W. COLVIN, ACTING  :
COMMISSIONER OF SOCIAL SECURITY,  :
    Defendant.  :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On December 12, 2012, when he was twenty-two years old, Plaintiff Christopher Coley applied for Disabled Adult Child benefits ("DAC")[1] and Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"). Initially, his claim of disability was based on Attention Deficit Disorder ("ADD"), learning disability and the inability to read; as the applications progressed, the claim of mild mental retardation complicated by back pain caused by scoliosis was added to the analysis. An Administrative Law Judge ("ALJ") denied the DAC application based on the finding that Plaintiff retained the residual function capacity ("RFC")[2] to perform full-time work; the Appeals Council denied the SSI application based on the same finding. Plaintiff contends that the ALJ's RFC determination was tainted by error in that the ALJ failed fully to consider whether Plaintiff

---

[1] Plaintiff's eligibility as a disabled adult child is based on 20 C.F.R. § 404.35(a)(5), which provides for benefits if "you are 18 years old or older and have a disability that began before you became 22 years old."

[2] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

met or equaled Listing 12.05[3] and failed properly to evaluate Plaintiff's credibility. The matter is now before the Court on Plaintiff's motion for reversal of the decision of the Commissioner of Social Security (the "Commissioner") denying his applications. Defendant Carolyn W. Colvin ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that the ALJ's findings are sufficiently supported by substantial evidence and recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be GRANTED.

**I.      Background**

The first evaluation of Plaintiff's intellectual functioning was performed when he was two after the discovery that he had elevated lead levels; it resulted in the finding of weaknesses in the areas of language and cognition. Tr. 237-42. Testing was repeated when he was almost three, with similar findings of weaknesses and the recommendation that he remain in "Early Intervention" and be referred for consideration of special education services when he turned three. Tr. 249. The first intelligence quotient ("IQ") test was administered when Plaintiff was six; a neuropsychological evaluation conducted at Bradley Hospital in August 1997 resulted in findings of processing speed in the 18th percentile, a verbal IQ of 79 (8th percentile), a performance IQ of 82 (12th percentile), and a full scale IQ of 78 (7th percentile), with "overall" intellectual ability in the "borderline range." Tr. 284. When Plaintiff was twelve in November 2002, he was tested again. That psychological evaluation revealed a Verbal IQ of 71, in the

---

[3] "Listing 12.05 *Intellectual disability*: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

"Mildly Deficient to Borderline range," a performance IQ of 83, in the "Borderline to Average range," and a full scale IQ of 75, in the "Borderline to Low Average range." Tr. 252. The 2002 report does not reflect a processing speed score. Tr. 252-57. Plaintiff was placed in special education, stayed back twice and left school in the tenth grade because he was frustrated by the possibility that he might be held back a third time. Tr. 29; but see Tr. 218 (in SSA disability report, Plaintiff claims he completed eleventh grade).

No other IQ test results appear in the record until Plaintiff was twenty-one. On May 15, 2012, he was examined by a state agency consulting psychologist, Dr. Wendy Schwartz. Tr. 304-11. Dr. Schwartz administered a battery of tests in connection with his then pending disability application. Her scores include a verbal comprehension of 76 (5th percentile), a perceptual reasoning of 79 (eighth percentile), a working memory of 71 (third percentile), a processing speed of 56 (0.2 percentile), all resulting in a full-scale IQ of 67 (first percentile). Tr. 308. Dr. Schwartz noted the anomaly in the "significant discrepanc[ies]" between the processing speed score (well below than 1st percentile) and the other subscores (ranging from 3rd to 8th percentile:

> A discrepancy analysis indicates a significant discrepancy between the Verbal Comprehension Index and Processing Speed Index, a discrepancy which occurs in this ability group (less than Full-Scale IQ of 79) at the 0.05 level about 5.8% of the time. There was also a significant discrepancy between the Perceptual Reasoning Index and Processing Speed Index, a discrepancy which occurs in this ability group at the 0.05 level about 3.2% of the time. Finally, there was a significant discrepancy between the Working Memory Index and Processing Speed Index, a discrepancy which occurs in this ability group at the 0.05 level about 13.2% of the time.

Tr. 309. The extremely low processing speed score pulled down Plaintiff's full scale IQ score from the borderline range to the range for mild mental retardation. Tr. 310. Importantly, Dr. Schwartz's discrepant processing speed score is materially different from Plaintiff's 1997

3

processing speed score, when testing at Bradley Hospital placed him in the 18th percentile; the Bradley testing resulted in the conclusion that his overall intellectual ability is in the borderline range. Tr. 284.

In addition to his intellectual deficits, Plaintiff has a spinal "overt deformity" in that his thoracic spine has advanced kyphosis with wedging of the vertebrae and early multilevel spurring, and his lumbar spine has lordosis. Tr. 320-30. In layman's terms, Plaintiff's back is humped, which has caused pain and resulted in the use of a cane to take some of the weight off the thoracic spine. Tr. 320-21, 341-42. To address the pain, Plaintiff was prescribed over-the-counter and prescription analgesic medication, as well as, at times, a muscle relaxant and an opioid pain medication, neither of which he found efficacious. Tr. 315-21, 351-52. At least once, he was offered injections or physical therapy, which he declined. Tr. 352. The spine condition was exacerbated by Plaintiff's obesity for which treating providers recommended a more healthy diet. Tr. 351-52. On examination, straight leg raises were negative and gait, walking, sitting, standing, and strength and tone were all normal, with limits only in bending and squatting. Tr. 342.

Plaintiff also has been diagnosed with depressive mood disorder, with findings on mental status examinations sometimes normal, Tr. 364-65, 411, and sometimes with depressed mood and blunted affect noted. E.g., Tr. 345-47. Nevertheless, mental status examination findings consistently include observations of no memory impairment, focused attention, unremarkable thought content, average fund of knowledge, and articulate speech. E.g., Tr. 345. Global Assessments of Functioning ("GAF") scores[4] for the period in issue generally placed Plaintiff in

---

[4] The GAF scale was omitted from the most recent update to the Diagnostic and Statistical Manual of Mental Disorders because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" Santiago v. Comm'r of Soc. Sec., No. 1:13-cv-01216, 2014 WL 903115, at *5 n.6 (N.D. Ohio Mar. 7, 2014) (citing Diagnostic and Statistical Manual of Mental Disorders at 16 (5th ed. 2013) ("DSM-5")). Nevertheless, adjudicators

the range for moderate symptoms, occasionally just below.  E.g., Tr. 315 (Thundermist GAF score at 50); Tr. 345 (Thundermist counsellor GAF score at 53 after five months of treatment); Tr. 374 (Thundermist counsellor intake GAF score at 53); see Tr. 310, 336 (Dr. Schwartz assigns GAF of 51, up from 40 assigned at her first examination).  Finally, the record reflects daily cannabis use and significant use of alcohol, resulting in diagnoses of cannabis dependence and alcohol abuse.  Tr. 336, 345, 354, 362.

With respect to his ability to function, the record establishes that Plaintiff has a driver's license (although he was tested orally and had to take the test three times), can drive, can ride the bus alone, goes to the corner store "[i]f it's not too crowded," and can make "simple meal[s]" for himself, such as microwavable meals and "macaroni and cheese and hotdogs and stuff like that."  Tr. 28, 35.  He has friends who talk with him, give him rides, and let him stay with them, as well as a girlfriend with whom he lives at times.  Tr. 27, 30.  He described his living situation as "bounc[ing] from house to house," staying with friends, family, and his girlfriend, although the record seems to reflect a more stable situation living with his girlfriend.  Tr. 27; e.g., Tr. 314 ("homeless but stays with fiancée"); Tr. 322 ("his wife wanted him to have a medical provider but he has no concerns"); Tr. 364 ("[H]e had helped around the house when his [significant other] was sick.  Stated it felt good to do that."); Tr. 373 (stays with girlfriend and her three children).  Plaintiff testified that he is able to care for himself; consistently, providers note that he always appeared well-groomed.  Tr. 28; e.g., Tr. 314.  He has limited prior work in landscaping for a friend over a three-month period, but testified that he stopped because "I couldn't keep up;" he also has worked under the table as a mechanic and said he enjoys working on cars.  Tr. 27, 307, 334.

---

may continue to receive and consider GAF scores.  SSA Admin. Message 13066 at 2-6, available at http://www.nysba.org/WorkArea/DownloadAsset.aspx?id=51489 (starting at p.19 of PDF document) (last visited Dec. 9, 2016).

## II.     Travel of the Case

Prior to the filing of these applications, Plaintiff filed a disability application on August 30, 2011, alleging a disability onset date of August 1, 2011, the same onset date alleged in these applications.  Tr. 198.  The earlier application was denied at the initial review level in June 2012; Plaintiff did not appeal.  This appeal arises from concurrent DAC/SSI applications filed by Plaintiff on December 12, 2012.  Tr. 198-206.  Following the denial of his claims, initially and upon reconsideration, Plaintiff requested a hearing, which was held on July 10, 2014, at which time Plaintiff, assisted by his attorney, and a vocational expert ("VE") appeared and testified.  The ALJ denied the DAC claim in an unfavorable decision dated August 6, 2014.  Tr. 111-27.  The Appeals Council upheld the ALJ's decision and denied the SSI claim for the same reasons on December 11, 2015.  Tr. 1-7.  From that adverse determination, this timely appeal was filed.

## III.    Issues Presented

Plaintiff's motion for reversal rests on two arguments.  First, he contends that the ALJ failed to fully consider whether Plaintiff met or equaled Listing 12.05(C) in light of Dr. Schwartz's Full Scale IQ score of 67, coupled with the other severe impairments found at Step Two (including scoliosis and lordosis, obesity, and affective disorder).  Second, he alleges that the ALJ failed to follow the proper rubric for evaluating Plaintiff's credibility.

## IV.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v.

Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 416.929(a).

The Court must reverse the ALJ's decision on plenary review, if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that the law was applied properly.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and

the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996). A Sentence Four remand is in issue in this case.

**V.      Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled

is warranted. 20 C.F.R. § 416.920(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).
In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois, 686 F.2d at 79; 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

**VI.   Evaluation of Subjective Symptoms**

When an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309-10 (D. Mass. 1998). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence. See Frustaglia, 829 F.2d at 195. The lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v.

Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence so that the credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by the Commissioner's 2016 ruling, which superseded SSR 96-7p.[5] SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. Id. at *4. The ALJ must also consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. Id.

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 416.928. In

---

[5] At the time the ALJ conducted a hearing and issued her decision, SSR 96-7p controlled as the effective date for SSR 16-3p is March 16, 2016. There are no material differences between the two rulings for the purposes of this case.

10

determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4. Treatment, other than medication, for relief of pain;

5. Functional restrictions; and

6. The claimant's daily activities.

Avery, 797 F.2d at 29; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I. Nov. 30, 2011). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**VII.    Analysis**

    **A.    Listing 12.05**

Plaintiff's primary attack on the ALJ's decision is focused on her failure to discuss at Step Three of the sequential evaluation process whether Plaintiff meets or equals Listing 12.05(C), which provides in relevant part:

> 12.05 *Intellectual disability*: Intellectual disability[6] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required

---

[6] Plaintiff incorrectly cites to the former version of this listing, which used the term "mental retardation." The current version of the regulation has substituted the term "intellectual disability." Dubey v. Colvin, C.A. No. 15-126ML, 2015 WL 9948260, at *9 n.2 (D.R.I. Dec. 11, 2015), adopted, 2016 WL 406346 (D.R.I. Feb. 2, 2016) ("Listing 12.05 was recently amended to change the name of the category from 'mental retardation' to 'intellectual disability,' but the substantive requirements to meet the Listing have not changed."). In this report and recommendation, I quote from the current version of the regulation, but also use the term "mental retardation" because it is used by Dr. Schwartz and by the state agency expert psychologists who reviewed the records.

11

> level of severity for this disorder is met when the requirements in . . . C . . . are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1. Pointing to Dr. Schwartz's full scale IQ score of 67 based on testing when Plaintiff was just shy of age twenty-two, the evidence of childhood deficits in adaptive functioning, including special education, limited social interaction and no full time employment, and his other severe impairments as found by the ALJ at Step Two, Plaintiff argues that proper consideration of this Listing would have led to the conclusion that it was met or medically equaled. Yet the ALJ did not even mention it as one of the Listings that she considered and rejected; instead, she adverts only to Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.09 (substance addiction disorders). Tr. 117. Plaintiff points out that, at the hearing, he specifically advised the ALJ that Listing 12.05(C) was his principal basis for contending that he was disabled. Tr. 24-26.

This argument falters on the substantial evidence on which the ALJ relied in affording little weight to the Schwartz full scale IQ of 67 and in finding that Plaintiff was intellectually functioning in the borderline range, so that it is clear that Listing 12.05(C), while not mentioned, is neither met nor equaled.

The First Circuit has recognized that Listing 12.05(C) contains two parts: first, the introductory paragraph requires significantly subaverage intellectual functioning and deficits in adaptive functioning that manifested before age 22; and, second, if the full scale IQ is in the higher range of "significantly subaverage intellectual functioning" (defined as between 60 and 70), there must be another significantly limiting work-related impairment. See Libby v. Astrue,

12

473 F. App'x 8, 8-9 (1st Cir. 2012); Silva v. Colvin, No. CA 14-301 S, 2015 WL 5023096, at *13 & n.12 (D.R.I. Aug. 24, 2015). Consistent with the ALJ's prerogative to weigh conflicting medical opinions to determine whether Listing 12.05(C) is met or equaled, Libby, 473 F. App'x at 9; Dubey, 2015 WL 9948260, at *10, the ALJ appropriately discounted Dr. Schwartz's diagnosis of mild mental retardation (full scale IQ between 60 and 70) in reliance on the opinions of the state agency reviewing psychologists (Dr. Colburn and Dr. Slavit), both of whom examined Dr. Schwartz's reports and specifically rejected mild mental retardation in favor of the competing diagnosis of borderline intellectual functioning.

The ALJ committed no error in affording great weight to the opinions of Dr. Colburn and Dr. Slavit. Their analyses were based not only on a rigorous review of all of the IQ scores in the record, but also on the evidence pertaining to how Plaintiff was actually functioning, including his ability to use public transportation independently, to maintain a one-year relationship with a girlfriend, to obtain a driver's license, and to live with friends. The ALJ echoed their observations that Dr. Schwartz's full scale IQ of 67 was materially lower than any other intellectual functioning scores in the longitudinal record and that Dr. Schwartz acknowledged that her score was affected by her discrepant processing speed score, which itself differed markedly from the prior processing speed score. See Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir. 2003) (Commissioner may reject IQ scores that are inconsistent with record). As Dr. Colburn wrote:

> While [claimant] has [diagnosis] of MR, he does not meet criteria for MR, as he performed in [borderline intellectual functioning] in developmental period, and is also able to navigate/deal with daily community demands. He has [driver's license], is able to find shelter, and per, [Social Security field office], was well groomed. T [sic] The MR dx appears to be predominantly due to performance on timed tasks (56). Other indices are in Borderline-Low Ave range. Intellectual deficits are compromised by low motivation and daily cannabis use. Thus, the most appropriate intellectual dx is BIF, not MR.

13

Tr. 62.[7] The ALJ's reliance on these opinions, coupled with her own review of the evidence, is more than sufficient to support her finding that Plaintiff's intellectual functioning deficit did not meet or equal Listing 12.05(C). See Plourde v. Barnhart, No. 02-164-B-W, 2003 WL 22466176, at *4 n.4 (D. Me. Oct. 31, 2003) ("it is appropriate for an administrative law judge to consider the record in its totality (including evidence of the claimant's functioning), in assessing the validity of a stated IQ score"), adopted, 2003 WL 22722078 (D. Me. Nov. 18, 2003); Wilkinson v. Astrue, No. CA 07-090 M, 2008 WL 1925133, at *7 (D.R.I. Apr. 30, 2008) ("The expert opinions . . . provided a valid basis for discounting the results of the IQ tests . . . . Accordingly, the ALJ was not required to accept those results when they were inconsistent with other evidence in the record.").

What remains is whether it was error requiring remand for the ALJ to have omitted Listing 12.05(C) from the listings mentioned in her decision. I conclude that it was not. Rather, courts consistently hold that the relevant inquiry is not whether the ALJ mentioned a particular listing, but whether substantial evidence supports the ALJ's finding – whether tacit or overt – that the listing was not satisfied. E.g., Hutchinson v. Astrue, Civil Action No. 10-30214-RWZ, 2012 WL 1642201, at *8 (D. Mass. May 9, 2012) (collecting cases); Marshall v. Colvin, Civil No. 13-cv-363-PB, 2014 WL 4258262, at *11 (D.N.H. Aug. 27, 2014). Although it might have been preferable for the ALJ to name Listing 12.05, which she clearly understood to be the

---

[7] Because of the prior application with the same onset date and apparently because of an error in referring the most recent application to two psychologists, two other expert reviewing psychologists (Dr. Hahn and Dr. Clifford) also reviewed the same file. Both came to the same conclusion as was reached by Dr. Colburn and Dr. Slavit in that both also rejected Dr. Schwartz's diagnosis of mental retardation. As Dr. Hahn noted, Plaintiff's "adaptive skills are grossly intact." Tr. 49, 59-60. As Dr. Clifford noted, "[t]he earlier developmental period does not match with [the] capsule definition of MR" in light of Plaintiff's earlier intelligence testing. Tr. 59. Although the ALJ did not specifically mention Dr. Hahn or Dr. Clifford in her decision, their opinions constitute additional evidence that the Court may consider as supportive of the ALJ's findings. See Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *2 (D.R.I. Oct. 21, 2008) (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)); Paquin v. Colvin, No. 1:13-cv-360-JDL, 2014 WL 6679123, at *4 n.5 (D. Me. Nov. 25, 2014) (citing cases).

principal issue in the case, Tr. 37, the omission is far from error requiring remand. There is "no reason to return [a] case for the purely formulaic purpose of having the ALJ write out what seems plain on a review of the record." Shaw v. Sec'y of Health and Human Servs., 25 F.3d 1037 (Table), 1994 WL 251000, at *5 (1st Cir. June 9, 1994) (unpublished); Frustaglia, 829 F.2d at 195 ("Although more express findings . . . than those given here are preferable, we have examined the entire record and their adequacy is supported by substantial evidence.").

Finding no error in the ALJ's Step Three analysis, I recommend that it be affirmed.

**B.     Credibility**

Plaintiff maintains that the ALJ failed to evaluate properly his subjective complaints as required by SSR 16-3p[8] and Avery, which require that the decision must contain specific reasons for an adverse credibility finding. The sole foundation for Plaintiff's argument is the supposed lack of stated "reasons." He does not point to any specific discredited testimony that, if accepted, would have altered the result.

The argument fails because the premise is wrong. The ALJ devoted literally pages to describe the ample "reasons" that support her adverse credibility finding. Tr. 117, 119-23. Further, the decision specifically adverts to evidence bearing on each the Avery factors. Id. (many references to evidence relating to intensity of pain and precipitating factors, pain medication, pain treatment and daily activities). With so robust an analysis, well supported by specific findings, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference." Frustaglia, 829 F.2d at 195.

---

[8] As noted in n.4, *supra*, SSR 16-3p was not yet in effect as of ALJ's decision. Plaintiff's reliance on the wrong ruling is immaterial, however, in that the changes do not affect his argument.

The ALJ's credibility determination is well supported by substantial evidence and should be upheld pursuant to the deferential standard articulated in Frustaglia.

## VIII. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be GRANTED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 12, 2016